UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KIDANNE MURDOCK,                           :

                Petitioner,        :        **<u>OPINION</u>**

          - v -                 :        21-cv-5624 (DC)

THOMAS MCGUINNESS,                         :

                Respondent.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          KIDANNE MURDOCK
                      Petitioner *Pro Se*
                      DIN 14-A-5538
                      Downstate Correctional Facility, Box F
                      Red Schoolhouse Road
                      Fishkill, NY 12524

                      ERIC GONZALEZ, Esq.
                      District Attorney, Kings County
                      By:    Jean M. Joyce, Esq.
                            Assistant District Attorney
                      350 Jay Street
                      Brooklyn, NY 11201
                          Attorney for Respondent

CHIN, Circuit Judge:

        On October 28, 2014, following a second jury trial,[1] petitioner Kidanne

Murdock was convicted in the Supreme Court of New York, Kings County

---

[1]       Murdock's first trial, which commenced in early April 2014, was declared a mistrial due to juror misconduct.  Dkt. 11 at 67; Dkt. 9 at 3 ¶ 14.

(Shillingford, *J.*), of one count of murder in the second degree, N.Y. Penal Law

§ 125.25[1], one count of assault in the first degree, *id.* § 120.10[1], and two counts of

criminal possession of a weapon in the second degree, *id.* § 265.03[1][b], [3].  Dkt. 13-1 at

481-83.  The court sentenced Murdock to a total of twenty-five years' imprisonment,

consisting of consecutive terms of twenty years to life for the murder count and five

years on the assault count, to run concurrently with terms of five years in prison on

each weapon possession count.  Dkt. 13-2 at 19.  Murdock was also sentenced to five

years of post-release supervision.  *Id.* at 20.

   The Appellate Division, Second Department affirmed his conviction, Dkt.

13-9 at 2; *People v. Murdock*, 163 A.D.3d 590 (2d Dep't 2018) (Rivera, *J.*) ("*Murdock I*"), and

the New York Court of Appeals denied his application for leave to appeal, *People v.*

*Murdock*, 32 N.Y.3d 1113 (2018) (Feinman, *J.*) ("*Murdock II*").

   On October 31, 2019, Murdock moved, *pro se*, to vacate his conviction

pursuant to N.Y. Crim. Proc. Law § 440.10[1][h], on the grounds that his trial counsel

was constitutionally ineffective for failing to conduct an adequate pretrial investigation

and for failing to raise a justification defense at trial.  Dkt. 13-6 at 14-36.  On January 22,

2021, the Supreme Court, Kings County (Shillingford, *J.*) denied his motion on the

merits.  Dkt. 13-8.  On March 2, 2021, Murdock sought leave to appeal the denial of his

motion, Dkt. 9 at 7 ¶ 25, and the Appellate Division, Second Department (Rivera, *J.*)

denied leave to appeal on June 25, 2021, Dkt. 13-9 at 2.

By papers dated September 28, 2021, and received by this Court on October 4, 2021, Murdock filed, *pro se*, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1. In his petition, Murdock contends that (1) he was denied his Sixth Amendment right to confront the witnesses against him when the People submitted DNA evidence through a witness who did not retrieve the data or perform any part of the DNA testing; (2) he was denied due process when the court refused to give a missing witness instruction; (3) he was denied due process and a fair trial due to his counsel's failure to investigate his case; (4) he was denied due process and a fair trial by his counsel's failure to raise a justification defense; and (5) he was denied his right to a fair trial when the prosecutor commented, during summation, on Murdock's failure to testify. *See generally id.*

For the reasons that follow, the Petition is DENIED.

### STATEMENT OF THE CASE

I.     *The Facts*[2]

The evidence at trial established the following:

---

[2]     The facts are primarily drawn from Respondent's brief submitted in opposition to Murdock's direct appeal in the Appellate Division in 2021. *See generally* Dkt. 13-4. The recitation of facts set forth in the state appellate brief are supported by detailed citations to the record, including the transcript of the trial and subsequent sentencing.

#### A.    *The Incident*

On August 31, 2011, at about 3:20 p.m., Andrew Mogg was talking to one of his tenants, Michael Daley, while Mogg's son rode his bicycle on the street.  Dkt. 12-1 at 16, 45-46, 220, 308.  Mogg had visited Daley's building to fix the toilet for a tenant on the top floor and encountered Daley working on his car radio outside.  *Id.* at 289-91. The two were talking when Murdock, his co-defendant Kevin Burgess, and a third man, B.G., walked up the street.  Dkt. 12 at 292-93, 333-34; Dkt. 12-1 at 220-23, 311-12.  Mogg's son stopped riding his bike and observed the men as they approached his father.  Dkt. 12-1 at 224.  As B.G. paced back and forth on the street, Murdock approached Mogg, and Burgess walked up and leaned on Daley's car.  Dkt. 12 at 292-93.

Murdock began accusing Mogg of "buying buildings, making money, and not taking care of them."  Dkt. 12 at 293.  Murdock grabbed Mogg by the collar, while Burgess called out, "I told you I was going to get you."  *Id.* at 294.  Mogg put his hand near his waistband, to indicate that he was armed, and Murdock immediately pulled out a gun.  *Id.*  Burgess then also indicated that he had a gun.  *Id.* at 295.

Daley was still working on his radio outside, trying not to get involved.  *Id.*  But when Daley looked up and saw a gun, he got up and ran toward the back of the house.  *Id.* at 295-96; Dkt. 12-1 at 233-34.  Murdock fired a shot at Daley, hitting him, and then pointed the gun back at Mogg.  Dkt. 12 at 296; Dkt. 12-1 at 234.  Mogg grabbed the cylinder of the gun in an attempt to wrestle it away and Murdock fired multiple shots at

4

Mogg, hitting him in his torso and limbs.  Dkt. 12 at 296-97; Dkt. 12-1 at 234; Dkt. 12-2 at

130.  Murdock, Burgess, and B.G. then fled up the street.  Dkt. 12 at 298-99; Dkt. 12-1 at

235.  Mogg ran to the front of the driveway, where he fell in front of his son.  Dkt. 12 at

299.  Daley died from the gunshot wound.  Dkt. 12-2 at 167.

       **B.**     ***The Investigation and Arrest***

       Sergeant Danny Murria (a lieutenant at the time of trial) arrived at the

location a few minutes after 3:21 p.m. and aided in escorting Mogg across the street.

Dkt. 12-2 at 270-71.  Sergeant Murria spoke with Mogg and learned that he knew who

the assailants were.  *Id.* at 271-72.  Although Mogg testified at trial that he knew Burgess

from the neighborhood, on the day of the incident, Mogg said that he had seen him only

once before.  Dkt. 13-3 at 10.  Mogg testified that he did not remember what he told

police at the scene.  Dkt 12-1 at 10-12.

       Sergeant Edwin Cardona arrived and saw Daley face-down in the alley,

covered in blood.  Dkt. 12 at 83-84 .  Detective Kapp, who was then with the Crime

Scene Unit, responded to the scene, conferred with the Medical Legal Investigator,

photographed the wounds on Daley's body, and recovered a blue Yankees baseball cap

on the sidewalk in front of scene near the Flatlands Avenue intersection.  *Id.* at 150-54.

The cap had a sticker on it.  *Id.* at 161.  Detective Kapp sent the cap and sticker to the lab

for DNA and hair and fiber analysis.  *Id.* at 259.

5

On September 2, 2011, Detective Daniel Mulvanerty of the Crime Scene Unit processed the white Acura for evidence and found six latent prints on the exterior which he sent to the fingerprint lab for analysis. Dkt. 12-2 at 235-38. Jeannette Scott-Rowe, an expert in gunshot residue and trace evidence collection analysis, analyzed the baseball cap found at the crime scene and recovered hair and fiber debris from it. Dkt. 12-1 at 180-81. Meredith Gitter, a criminalist and expert in latent print development, identified five latent fingerprints on the sticker of the cap; one of which was later identified as a match for Murdock's right index finger. *Id.* at 160-61; Dkt. 13 at 16-21. Gitter sent the cap and sticker to the evidence control unit for DNA examination. Dkt. 12-1 at 161. Murdock was the source of DNA found on scrapings taken from the cap. Dkt. 13 at 541-42. On May 14, 2012, Police Officer Stephen Deady, an expert in ballistics and firearm tool mark examination, compared a bullet taken from Daley's body at the morgue with a bullet removed from Mogg at the hospital, and concluded that the bullets were fired from the same gun. Dkt. 12-1 at 136-40; Dkt. 12-2 at 166-67.

On February 10, 2012, Murdock was apprehended in Brooklyn and was placed under arrest by Detective John Mauro, who had retired by the time of the trial. Dkt. 13 at 363-66. Mogg identified Murdock in a lineup as a participant in the incident. Dkt. 12 at 312-13. Fifteen minutes later, in a second lineup, Mogg's son identified Murdock as the shooter. Dkt. 12-1 at 237-39. Following the lineups, Murdock was given a *Miranda* warning and waived his rights before speaking with Detectives Mauro

6

and Nash.  Dkt. 13 at 368-70.  According to Detective Mauro, Murdock stated that on the date of the shooting, Burgess called Murdock and told him that he knew Mogg from the neighborhood as someone who's "got flashy cars and a lot of money and houses." *Id.* at 371.  Murdock stated that the three of them met up and that he was armed when they walked up to Mogg.  *Id.* at 371-72.  Murdock then stated that when he approached Mogg, "he got very nervous because he thought that Mr. Mogg was reaching for a gun," whereafter, Murdock stated that "he panicked and started shooting."  *Id.* at 374. Murdock then wrote a statement confirming this narrative.  *Id.* at 374-78.  In a second written statement, Murdock repeated the claims and added that he had previously seen Mogg with a gun.  *Id.* at 377.

## II.    *The State Court Proceedings*

### A.    *The Indictment and First Trial*

A 2012 Kings County indictment charged Murdock with one count of murder in the first degree in violation of N.Y. Penal Law § 125.27[1][a][vii], two counts of murder in the second degree in violation of N.Y. Penal Law § 125.25[1], [3], one count of attempted murder in the second degree in violation of N.Y. Penal Law §§ 110.00 and 125.25[1], one count of assault in the first degree in violation of N.Y. Penal Law § 120.10[1], three counts of attempted robbery in the first degree in violation of N.Y. Penal Law §§ 110.00 and 160.15[1], [2], and two counts of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03[1][b], [3].  *See* Dkt.

9 at 3 ¶ 12.  Murdock proceeded to a trial by jury, and on April 23, 2014, the court (Shillingford, *J.*) declared a mistrial because of jury misconduct.  Dkt. 11 at 67.

### B.    Second Trial

Murdock proceeded to a retrial for the same counts on September 10, 2014.  *Id.* at 69.  Judge Shillingford also presided over the second trial, and Damien Brown represented Murdock.  *Id.*  The jury heard testimony from numerous witnesses, including Sergeant Edwin Cardona, Dkt. 12 at 78, Detective Bruce Kapp, *id.* at 145, Police Officer Howard Neysmith, Dkt. 12-1 at 113, Detective Kevin McDonough, Dkt. 12-2 at 213, Lieutenant Danny Murria, *id.* at 267, retired Detective John Mauro, Dkt. 13 at 92, Detective Lawrence Wein, Dkt. 13 at 655, Detective James Nash, *id.* at 686, Police Officer Samuel Maria, *id.* at 822; Sergeant John Trzcinski, an NYPD property clerk, Dkt. 12-2 at 120; Stephen Deady, an expert in firearm and tool mark examination, Dkt. 12-1 at 129; Charles W. Haase, a self-employed ballistics and crime scene forensic consultant, Dkt. 13 at 876; Sergeant Dennis Chan, a member of the New York Police Department ("NYPD") Information Technology Service Division, *id.* at 436; Meredith Gitter, a NYPD criminalist, Dkt. 12-1 at 151; Jeannette Scott-Rowe, a NYPD criminalist, *id.* at 169; Detective James Maloney, a NYPD member of the Latent Print Section, Dkt. 13 at 12; Detective Adam Heege, a NYPD member of the Regional Task Force, *id.* at 37; Dr. John Stites, an expert in general surgery and urologic surgery, Dkt. 12-2 at 126; Yvonne Milewski, an expert in forensic pathology, *id.* at 152; Melissa Huyck of the Forensic

Biology Department of the Office of Chief Medical Examiner ("OCME"), Dkt. 13 at 498; Elaine Matzen, a prior employee with the OCME Forensic Biology Department, *id.* at 641; Joseph Sierra, a T-Mobile compliance officer, *id.* at 453; Robert Sweig, a New York Department of Education Superintendent, Dkt. 13-1 at 187; Richard Whyte, a neighbor of Andrew Mogg, Dkt. 13 at 136; Andrew Mogg, Dkt. 12 at 284; Dkt. 12-1 at 4; and Mogg's son, Dkt. 12-1 at 218.  Defense counsel cross-examined each of those witnesses but was precluded from asking questions of one interrogating detective regarding "a prior substantiated incident in which the same detective used excessive force."  Dkt. 13-3 at 8.

       The prosecution rested on October 3, 2014.  Dkt. 13 at 786.  Murdock did not testify but called a number of other witnesses, and the defense rested on October 17, 2014.  *Id.* at 1095.  After summations and five days of deliberations, the jury reached a verdict on October 28, 2014, finding Murdock guilty on one count of intentional second-degree murder, one count of first-degree assault, and two counts of criminal possession of a weapon.  Dkt. 13-1 at 481-83.  The jury acquitted Murdock of one count of first-degree murder, one count of second-degree murder, one count of attempted second-degree murder, and three counts of attempted first-degree robbery.  *Id.*

### C.    *Sentencing*

       Sentencing took place on December 11, 2014.  Dkt. 13-2 at 2.  The hearing began with testimony from Daley's mother, *id.* at 5-9, and Daley's wife, *id.* at 9-12,

followed by a motion by defense counsel to set aside the verdict as against the

sufficiency of the evidence, *id.* at 13.  Specifically, defense counsel argued that that

"there was no credible evidence that [his] client aimed purposely at Michael Daley with

the intention of killing him."  *Id.* at 14.  The People responded, arguing that "the verdict

does not rise to the level of repugnancy," and that the testimony supported the jury's

finding of the requisite intent.  *Id.* at 15.  The trial court denied the motion to set aside

the verdict.  *Id.* at 15-16.  The court noted that "there was substantial evidence with

respect to the charges upon which the defendant was convicted in this case."  *Id.* at 16.

Murdock did not address the court, but through trial counsel expressed

"sadness in his heart for [Daley's family's] loss."  *Id.* at 16.  Defense counsel argued for a

more lenient sentence on the basis that Murdock was a young man and had experienced

emotional difficulties and trauma.  *Id.* at 16-17.

The court sentenced Murdock to consecutive terms of imprisonment of

twenty years to life for the murder count and five years for the assault count, to be

served concurrently with terms of five years on each weapon possession count.  *Id.* at

19.  Murdock was also sentenced to five years of post-release supervision.  *Id.* at 20.

## D.    *Direct Appeal*

Murdock appealed his conviction to the Appellate Division, Second

Department, asserting the following claims: (1) Murdock was denied his Sixth

Amendment right to confront the witnesses against him when the People submitted

DNA evidence through a witness who did not retrieve the data or perform any part of the DNA testing; (2) the court abused its discretion and denied Murdock a fair trial when it precluded counsel from questioning one of the interrogating detectives about a substantiated excessive force complaint against him; (3) Murdock was denied due process when the court refused to give a missing witness charge as to the father of the complainant; and (4) Murdock was purportedly deprived of due process and a fair trial when the prosecutor, on summation, commented on Murdock's failure to testify and on his right to a trial.  *See generally* Dkt. 13-3.

The Appellate Division affirmed Murdock's conviction on July 5, 2018.  *See Murdock I*, 163 A.D.3d at 590.  The Appellate Division concluded that (1) Murdock's contention that his confrontation rights were violated when an expert witness testified regarding DNA evidence was "partially unpreserved for appellate review since, although defense counsel made an objection at trial based on the Confrontation Clause, defense counsel did not argue that the expert witness did not independently analyze the data" and that, in any event, "[t]he error in admitting the expert witness's testimony . . . was harmless beyond a reasonable doubt, because [of] the [overwhelming] evidence of defendant's guilt," *id.* at 590-91; (2) the trial court "providently exercised its discretion in limiting defense counsel's cross-examination of a detective as to that witness's prior bad acts, since counsel failed to establish a good faith basis in fact for this inquiry," *id.* at 591; (3) there was "no merit to [Murdock's]

contention that certain comments made by the prosecutor on summation deprived him of a fair trial," *id.*; and (4) Murdock's contention that there should have been a missing witness charge was "without merit," *id.*

On November 16, 2018, the New York Court of Appeals denied Murdock's application for leave to appeal. *See Murdock II*, 32 N.Y.3d at 1113.

On October 31, 2019, Murdock moved to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10[1][h], on the grounds that his trial counsel was constitutionally ineffective for failing to conduct an adequate pretrial investigation and for failing to raise a justification defense at trial. Dkt. 13-6 at 14-36. On January 22, 2021, the Supreme Court, Kings County, denied Murdock's motion to vacate on the merits. Dkt. 13-8. Murdock sought to appeal from the denial of his motion on March 2, 2021. Dkt. 9 at 7 ¶ 25. On June 25, 2021, the Appellate Division, Second Department denied Murdock's application for a certificate granting leave to appeal the denial of his motion to vacate the judgment of conviction. Dkt. 13-9 at 2.

## III.    *The Petition*

In the Petition, Murdock seeks habeas relief based on the grounds raised in his direct appeal to the Appellate Division, Second Department, Dkt. 1 at 2-3; *see* Dkt. 13-3 at 6-7; *Murdock I*, as well as an additional claim of ineffective assistance of counsel as laid out in his motion to vacate, Dkt. 1 at 5. Respondent opposed the Petition on December 23, 2021. Dkt. 9. Murdock filed a reply on February 9, 2022. Dkt. 16.

On September 13, 2024, the case was reassigned to the undersigned.

## DISCUSSION

### I.    Federal Review of State Convictions

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (alterations in original) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

### II.    Analysis

In his petition, Murdock contends that (1) he was denied his Sixth Amendment right to confrontation when the prosecution submitted DNA evidence

13

through a witness who did not personally engage in the DNA testing or retrieval; (2) he

was denied due process when the court did not issue a missing witness instruction for a

material witness; (3) defense counsel was ineffective for (a) failing to investigate

defendant's case and (b) failing to raise a justification defense; and (4) the prosecutor's

summation denied him a fair trial.  I address each claim in turn.

### A.    The Confrontation Claim

First, Murdock contends that the testimony of the OCME analyst, Melissa

Huyck, deprived him of his confrontation right under the Sixth Amendment.

Specifically, Murdock claims that Huyck did not collect or test the DNA evidence

herself, and so the trial court's admission of her testimony -- over defense counsel's

objection -- was erroneous.  On direct appeal, the People argued that Murdock's claim

was partially unpreserved for appellate review because defense counsel failed to argue,

with specificity, that Huyck did not independently analyze the data.  The People

contended further that New York law permits an analyst who has not personally tested

the DNA evidence to "testify after analyzing the necessary data, including an

independent analysis of the computer imaging from the software used for calling the

alleles and recording their separate and distinct analysis."  Dkt. 9 at 16 (quoting *People v.*

*John*, 52 N.E.3d 1114, 1127 (N.Y. 2016)).  The Appellate Division agreed that the claim

was partially unpreserved under N.Y. Crim. Proc. Law § 470.05, and held that,

regardless, the "error in admitting the expert witness's testimony regarding DNA

evidence, if any, was harmless beyond a reasonable doubt, because the [other] evidence of the defendant's guilt . . . was overwhelming." *Murdock I*, 163 A.D.3d at 590-91.

"Federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The procedural rule is adequate if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). The state court's decision is independent when it relied on the procedural bar as an independent basis to reach its conclusion and expressly states as much. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). "In addition, a state court's reliance on an independent and adequate procedural bar precludes habeas review even if the state court also rejected the claim on the merits in the alternative." *Allen v. Artus*, No. 09-CV-4562, 2014 WL 1918721, at *7 (E.D.N.Y. May 14, 2014).

Habeas relief is not available to Murdock for his confrontation claim. The Appellate Division relied on an independent and adequate state ground when it held that Murdock's claim was "partially unpreserved for appellate review [because] . . . defense counsel did not argue [with specificity] that the expert witness did not independently analyze the data" as required by N.Y. Crim. Proc. Law § 470.05. *Murdock*

*I*, 163 A.D.3d at 590.  That the Appellate Division also rejected the claim on the merits does not preclude this Court from applying the procedural default rule.

Moreover, Murdock has failed to demonstrate that he is entitled to an exception to the procedural default rule because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104-05 (2d Cir. 2011).

Murdock's confrontation claim fails on the merits in any event.  In *Williams v. Illinois*, the Supreme Court held that an expert forensic analyst may testify about a DNA match based on a scientific report developed by non-testifying analysts without violating the Confrontation Clause.  567 U.S. 50 (2012), *abrogated by Smith v. Arizona*, 602 U.S. 779 (2024).  At the time of Murdock's conviction, "the Supreme Court ha[d] never held that the Confrontation Clause requires an opportunity to cross examine each lab analyst involved in the process of generating a DNA profile and comparing it with another."  *Washington v. Griffin*, 876 F.3d 395, 407 (2d Cir. 2017).  Here, Huyck was the reporting analyst for the case and performed the final DNA analysis comparing the DNA profile to items found at the scene.  Dkt. 13 at 509-14.  Although other lab analysts tested the raw materials, Huyck performed an independent comparison of the DNA alleles.  *Id.* at 528-29.  Moreover, the trial court limited Huyck's statements that derived entirely from observations of other analysts and were not

16

performed by her independently. *Id.* at 537-38. Murdock accordingly has not

demonstrated that the court's admission of Huyck's testimony involved an

unreasonable application of federal law.

As noted above, a recent Supreme Court case, *Smith v. Arizona*, 602 U.S.

779 (2024), abrogated *Williams*.[3] There is, however, a general rule of nonretroactivity for

cases on habeas review. *See generally Teague v. Lane*, 489 U.S. 288 (1989). Indeed, the

Supreme Court has clarified *Teague* by declaring that "[n]ew procedural rules do not

apply retroactively on federal collateral review." *Edwards v. Vannoy*, 593 U.S. 255, 272

(2021) ("Continuing to articulate a theoretical exception that never actually applies in

practice offers false hope to defendants, distorts the law, misleads judges, and wastes

the resources of defense counsel, prosecutors, and courts."). Accordingly, to the extent

that *Smith* articulates a new rule of criminal procedure, it cannot be applied

retroactively to Murdock on habeas review. Finally, to the extent that there is any error

in this respect, I agree with the Appellate Division that the error was harmless in light

---

[3]     Because this habeas petition has been pending for three years, neither party addresses *Smith*.
Indeed, *Smith* holds that "when an expert conveys an absent analyst's statements in support of [the
expert's] opinion, and the statements provide that support only if true, then the statements come into
evidence for their truth." *Id.* at 783. The Supreme Court accordingly found that the protections of the
Confrontation Clause apply when a substituted analyst offers independent conclusions while conveying
the substance of an underlying report. *Id.* at 803 ("Neither may the state introduce those statements
through a surrogate analyst who did not participate in their creation. And nothing changes if the
surrogate . . . presents the out-of-court statements as the basis for his expert opinion." (citation omitted)).
The Court left the question of whether such out of court statements are "testimonial" open for trial courts
to decide. *Id.* at 801-02. This decision marked a departure from the progeny of cases following *Crawford
v. Washington,* 541 U.S. 36 (2004).

of the overwhelming evidence of Murdock's guilt, including fingerprint and ballistics evidence and his own written admission that he approached Mogg and shot at Daley. Dkt. 13 at 377.

> **B.    *The Missing Witness Instruction Claim***

Murdock contends that the trial court deprived him of his due process rights by failing to give the jury a missing witness instruction for Stanley Mogg -- Andrew Mogg's father -- who was present during the shooting but did not testify at trial.  Defense counsel raised the issue during trial, arguing that both Andrew Mogg and his son had testified that Stanley was reading a newspaper on a second-floor porch across the street during the shooting, and was "essentially an eyewitness who's a direct relative . . . [and] could [have been] expected to testify favorably to [Andrew Mogg], [but has not]."  *Id.* at 600-01, 608.  The People countered first that Stanley Mogg primarily lives in Jamaica and "just happened to be up there at that particular time," and then contended that Mogg's testimony did not conclusively support that Stanley witnessed the crime.  *Id.* at 603-04; Dkt. 12 at 315-16.  The trial court considered the objection and concluded that "even if the defense met its initial burden . . . the People have met their burden of demonstrating that the witness is not knowledgeable about [the identity of the shooter] given the testimony."  Dkt. 13 at 609.

On direct appeal, Murdock argued that "Stanley could have given material testimony concerning the identification of the shooter, [and] the prosecution's

failure to call Stanley as a witness warranted a missing witness charge."  Dkt. 13-3 at 33.

The Appellate Division concluded that Murdock's contention was meritless.  *Murdock I*,

163 A.D.3d at 591 (citing *People v. Whitlock*, 95 A.D.3d 909, 911 (N.Y. 2012) ("The

defendant's request for a missing witness charge following the close of the evidence at

trial was untimely.  In any event, the defendant failed to meet his burden of establishing

his prima facie entitlement to a missing witness charge in the absence of any evidence

that the uncalled witnesses had knowledge of a material issue or would provide

noncumulative testimony, particularly in light of the investigating officer's testimony

that he interviewed the uncalled witnesses, each of whom told him that they did not see

who shot [the victim].")).

        The decision to give a missing witness charge is discretionary.  *See People*

*v. Smith*, 128 N.E.3d 649, 652-53 (N.Y. 2019).  Due to "gamesmanship frequently

accompan[ying] requests for missing witness charges," we accord great deference to the

trial court's consideration of the facts and ultimate decision.  *United States v. Gaskin*, 364

F.3d 438, 463 (2d Cir. 2004) (internal quotation marks omitted).  Under New York law, a

missing witness charge may be appropriate where the proponent shows that "the

uncalled witness is knowledgeable about a material issue upon which evidence is

already in the case; that the witness would naturally be expected to provide

noncumulative testimony favorable to the party who has not called him, and that the

witness is available to such party." *People v. Gonzalez*, 502 N.E.2d 583, 586 (N.Y. 1986).

The initial burden is upon the party seeking the charge, and once met, shifts to the opposing party. *Id.* To defeat a request for the charge, the opposing party can demonstrate "that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be cumulative to other evidence, that the witness is not 'available,' or that the witness is not under the party's 'control' such that he would not be expected to testify in his or her favor." *Id.*

With respect to habeas review, "the failure to provide a missing witness charge in accordance with New York law is a matter of state law for which habeas relief is unavailable." *Bisnauth v. Morton*, No. 18-CV-4899, 2021 WL 3492746, at *14 (E.D.N.Y. Aug. 9, 2021). Instead, Murdock would be entitled to habeas relief only if the trial court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). "Like the failure to give any other jury instruction, the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure 'so infected the entire trial that the resulting conviction violated due process.'" *Klosin v. Conway*, 501 F. Supp. 2d 429, 444 (W.D.N.Y. 2007) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Moreover, failure to give a missing witness charge is an error of omission, and thus less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

20

Murdock has failed to demonstrate that the trial court's denial of a missing witness charge deprived him of his due process rights.  Assuming, *arguendo*, that the trial court erred by failing to give the jury a missing witness charge for Stanley Mogg, Murdock has not shown that the failure so infected his trial that his resulting conviction violated due process.[4]  As noted above, there was substantial evidence of Murdock's guilt.  There is no indication that Stanley Mogg actually witnessed the crime, much less that his testimony would have altered the outcome of the trial.  Murdock is therefore not entitled to habeas relief for this claim.

C.    *The Ineffective Assistance of Counsel Claims*

Murdock advances two ineffective assistance of counsel claims.  First, he argues that his lawyer rendered ineffective assistance by failing to investigate the incriminating statements Murdock made to the police.  Dkt. 1 at 10.  Second, he contends that his lawyer failed to raise the justification defense.  *Id.* at 11-12.  These challenges are meritless, and habeas relief is thus unavailable, for the reasons stated below.

---

[4]    The trial court likely did not err under New York law in denying Murdock's application for a missing witness charge.  Murdock's counsel argued that Stanley witnessed the shooting, but there were discrepancies between the testimony of Andrew Mogg and his son as to whether Stanley witnessed the actual shooting.  Dkt. 12-1 at 281-82.  Additionally, detectives interviewed Stanley after the shooting, who stated that he saw part of the altercation, but has poor vision.  Dkt. 13 at 604.  Because the alleged "material issue" was the identity of the shooter, the People properly refuted Murdock's application by demonstrating that Stanley did not actually identify the shooter.  *Id.*  After considering the parties' arguments, the trial court relied on its sound discretion to deny the charge.  *See also Gonzalez*, 502 N.E.2d 583, 586 ("[T]o allow for effective judicial review, it is imperative that all discussions regarding this matter be clearly set forth on the record so that the respective positions of each party are readily discernible.").

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness" and (2) establish prejudice by demonstrating a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 669, 688, 694 (1984). In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard for establishing an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, the state

22

standard does not require the defendant to demonstrate that he or she was prejudiced by the ineffective assistance. *See Alvarez*, 125 N.E.3d at 120.

### 1. *Failure to Investigate Incriminating Statements*

The trial court's decision to deny Murdock's post-judgment ineffective assistance of counsel claim was not objectively unreasonable. "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (internal citations and quotations omitted). The court undertook an extensive examination of the record noting that, *inter alia*, defense counsel filed an omnibus motion seeking preclusion and suppression of all statements made by Murdock, defense counsel petitioned for a *Huntley* hearing pertaining to Murdock's statements, and defense counsel challenged Murdock's oral and written statements in pre-trial proceedings. Dkt. 13-8 at 9. Defense counsel also extensively cross-examined each detective who participated in taking Murdock's statement. Dkt. 9 at 30. Defense counsel made a diligent and reasonable attempt to exclude Murdock's statements to police. Accordingly, Murdock has not shown that his counsel was ineffective for failing to investigate his incriminating statements.

### 2.  *Failure to Raise Justification Defense*

Murdock has failed to meet his burden of proving that defense counsel was ineffective for failing to raise a justification defense because his claims are based on counsel's strategic choices that are "virtually unchallengeable" before this Court. *Strickland*, 466 U.S. at 690.  Murdock contends that he had "stated in his statement that he was afraid and that['s] why he did the shooting," Dkt. 1 at 12, and that by strategizing a defense based on misidentification rather than justification, defense counsel was ineffective.  But as made clear in defense counsel's affirmation, his strategic decision was grounded in the law and the facts of Murdock's case.  First, ample evidence established that Murdock approached Mogg armed and threatened both him and Daley, the latter of whom was merely fixing his car outside.  It is unlikely that the justification defense would have been more successful than the misidentification theory, because Daley was shot running away from the shooter.  Second, defense counsel *did* obtain a jury instruction for the justification defense with respect to the counts of first-degree and second-degree murder.  Dkt. 9 at 33.  Finally, counsel obtained an acquittal of the first-degree murder charge.

Thus, Murdock fails to show that defense counsel's performance fell below an objective standard of reasonableness, and he has failed to show that the state court's determination to that effect was objectively unreasonable.  Moreover, to the extent Murdock must show prejudice under federal law, he has failed to do so.

Accordingly, Murdock's claims of ineffective assistance provide no basis for habeas review.

###### D.    The Summation Error Claim

Murdock argues that the prosecutor's summation was improper.  The Appellate Division considered this claim on the merits and concluded that comments made by the prosecutor did not deprive Murdock of a fair trial, and "[t]o the extent that any remarks were improper, they were not so flagrant or pervasive as to deprive [Murdock] of a fair trial." *Murdock I*, 163 A.D.3d at 591 (citing *People v. Almonte*, 23 A.D.3d 392, 394 (N.Y. App. Div. 2005)).  Because this was an adjudication on the merits by the state court, the decision is entitled to "substantial deference." *Fischer*, 780 F.3d at 560.  This Court will not disturb the Appellate Division's conclusion unless Murdock can show that it "involved an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1).

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone," especially "in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985).  "[I]t is not enough that the prosecutors remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations omitted).  "In order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Gonzalez v. Sullivan*, 934

F.2d 419, 424 (2d Cir. 1991) (alteration in original) (quoting *Donnelly v. DeChristoforo*, 416

U.S. 637, 643 (1974)).  "Whether a prosecutor's improper remarks result in a denial of

due process depends upon whether the remarks caused 'substantial prejudice' to the

defendant." *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989).  To determine

whether "substantial prejudice" exists, the court "must assess how prejudicial the

prosecutor's conduct was, what measures, if any, the trial court used to cure the

prejudice, and whether conviction was certain absent the prejudicial conduct."

*Gonzalez*, 934 F.2d at 424.

       During summation, the prosecutor stated: "You have heard no evidence

whatsoever that Mr. Murdock felt threatened. . . .  Threatened, coerced, or anything.

You heard no evidence of that from anybody here."  Dkt. 13-1 at 310-11.  The prosecutor

also stated that "we are here because every single person in this country has the right to

trial by jury no matter what the evidence is against him.  That's why we are here."  *Id.* at

317.  Defense counsel objected both times and the trial court overruled both objections.

*Id.* at 311, 317.  Murdock contends these statements encouraged the jury to draw a

negative inference about his decision not to testify in his trial, and therefore infringed

on his right to remain silent.

       The prosecutor's remarks did not exceed the bounds of permissible

commentary.  Indeed, they were responsive to defense counsel's summation comments,

including that defendant was subjected to police "tactics" such as "keep[ing] him

26

isolated for long periods of time, [without] tell[ing] him [why], leaving him guessing," *id.* at 261; that he was alone "for hours" and was "presumably hungry," *id.* at 264; and insinuating that he was "easier to manipulate" because he was a "ninth grade dropout," *id.* at 269. "[S]tatements during summation are permissible if they constitute . . . a 'fair response to remarks made by the defense counsel during summation.'" *Byron v. Ercole*, No. 07 CIV. 4671, 2008 WL 2795898, at *8 (E.D.N.Y. July 18, 2008) (alterations in original) (quoting *Roman v. Filion*, No. 04 Civ. 8022, 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005)). The prosecutor was merely refuting defense counsel's suggestions that Murdock was coerced into giving his confession. Based on defense counsel's summation, and the relatively benign statements made by the prosecutor, Murdock has failed to demonstrate that the prosecutor's summation was "so prejudicial that a new trial is required." *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir.1992). Accordingly, habeas relief is not available on this ground.

## CONCLUSION

Murdock has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of appealability because Murdock has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of Court shall enter judgment accordingly and shall also mail

copies of this decision and the judgment to Murdock at his last address of record.

SO ORDERED.

Dated:          New York, New York
                December 9, 2024


_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation

28